IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| SKYLAR HALEY LP, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 09-965-JO |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| MEDURI FARMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

    Andrew T. Reilly
    Michael B. Merchant
    Natalia Yegorova
    BLACK HELTERLINE, LLP
    805 S.W. Broadway, Suite 1900
    Portland, OR  97205-3359

  Attorneys for Plaintiff

    Dallas S. DeLuca
    Jeffrey M. Edelson
    Peter H. Glade
    MARKOWITZ HERBOLD GLADE & MEHLHAF, PC
    1211 S.W. Fifth Avenue, Suite 3000
    Portland, OR  97204

  Attorneys for Defendant

JONES, Judge:

On August 18, 2009, plaintiff Skylar Haley LP brought this action against defendant Meduri Farms, Inc., alleging state law claims for breach of contract, accounting, misappropriation of trade secrets, and misappropriation of confidential information. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, based on diversity of citizenship.

This action is now before the court on defendant's motion (# 26) for partial summary judgment. Specifically, defendant seeks an order (1) limiting plaintiff's damages; (2) dismissing plaintiff's claim for an accounting as barred by the doctrine of laches; (3) dismissing plaintiff's third claim as time-barred; and (4) dismissing plaintiff's fourth claim as both time-barred and preempted by the Oregon Trade Secrets Act, ORS 646.461 et seq. For the reasons explained below, defendant's motion is granted with respect to dismissal of Claims 2, 3, and 4; and denied with respect to damages.

## STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. United Steelworkers of America v. Phelps Dodge, 865 F.2d 1539, 1542 (9th Cir. 1989).

The substantive law governing a claim determines whether a fact is material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also T.W. Elec. Service v. Pacific Elec.

Contractors, 809 F.2d 626, 630 (9th Cir. 1987).  Reasonable doubts as to the existence of a material factual issue are resolved against the moving party.  T.W. Elec. Service, 809 F.2d at 631.  Inferences drawn from facts are viewed in the light most favorable to the non-moving party. Id. at 630-31.

## FACTUAL BACKGROUND

The following facts, drawn from the parties' concise statements, are undisputed unless otherwise noted.

Defendant manufactures dried fruit products in Dallas, Oregon.  Non-party Diversified Food Resources, LLC ("Diversified") is a "full-service master broker" in the food industry working with specialty food producers and packaged food manufacturers.  Defendant is Diversified's principal partner.

Not later than September 2003 and continuing through at least February 2006, plaintiff, a California entity, purchased dried infused blueberry products from defendant, which plaintiff then sold to Costco Wholesale, Inc. ("Costco"), and others.

In a letter dated September 9, 2005, Costco committed to purchase 3,500,000 pounds of dried blueberries from plaintiff at a price of $5.50 per pound, f.o.b. defendant's factory in Dallas, Oregon.  Costco's commitment was for one year; there was no other written commitment between Costco and plaintiff.  On or about September 15, 2005, plaintiff sent a one-year master purchase order to defendant for 3,500,000 pounds of dried blueberries at a price of $5.05 per pound.  On or about September 25, 2005, the parties signed a Purchase Agreement with a one-year term.

3 - OPINION AND ORDER

Between September 2005 and September 2006, defendant supplied dried blueberries to plaintiff. The parties disagree as to the specific amount: Plaintiff claims delivery of 564,480 pounds; defendant claims delivery of a minimum of 650,000 pounds.

In October 2005, representatives of plaintiff, defendant, and Costco met. As reflected in a series of e-mail communications, among the topics under discussion were "the relationship between [defendant], [plaintiff] and Costco, and Costco's desire to have direct dealings with manufacturers," presumably including defendant, and that "[Costco] would consider bypassing [plaintiff] in this process." Declaration of Dallas DeLuca, Exh. 6, p.1. The parties disagree over the interpretation of the discussions as reflected in the e-mails, but their factual dispute does not affect the resolution of the present motion.

At some point, defendant stopped providing blueberries to plaintiff, citing supply problems and high demand. Plaintiff was unable to procure blueberries from other suppliers to meet its obligations to Costco, and in February 2006, Costco cancelled its contract with plaintiff to purchase blueberries for the Kirkland Signature brand.

As mentioned, plaintiff filed this action in this court on August 18, 2009.

DISCUSSION

Defendant's arguments fall into two general categories. In the first category, statute of limitations, defendant challenges three of plaintiff's claims, Accounting (Claim 2), a statutory claim for Misappropriation of Trade Secrets (Claim 3), and a common law claim for Misappropriation of Confidential Information (Claim 4), as time-barred. In the second category, defendant contends that as a matter of law, plaintiff's damages should be limited to lost profits for the 2005-2006 contract year. I address these arguments in turn.

4 - OPINION AND ORDER

1.       Statute of Limitations

        a.       Characterization of Plaintiff's Common Law Claim (Claim 4).

Plaintiff's statutory claim for misappropriation of trade secrets is subject to the three-year limitation period set forth in ORS 646.471. Defendant also contends that plaintiff's common law claim is preempted by the Oregon Trade Secrets Act ("OTSA") and subject to the same limitations period; or, if not preempted, the common law claim is subject to the general tort two-year limitation period set forth in ORS 12.110(1).

Plaintiff responds that the common law claim is grounded in contract and is subject to the six-year limitations period for contract claims. If plaintiff is correct, then the OTSA does not preempt the claim (see ORS 646.473(2)(a)[1]), nor does the two-year limitation period apply.

I have reviewed plaintiff's complaint and considered the relevant Oregon case law, and I agree with defendant that plaintiff's common law claim sounds in tort and is preempted. Without question, the allegations of plaintiff's statutory and common law claims derive from the same set of operative facts. As recognized in AcryMed, Inc. v. ConvaTec, 317 F.Supp.2d 1204 (D. Or. 2004):

> [A] number of courts in other states have extended the preemptive effect of the same language [as ORS 646.473(1)] to claims that are based on the same operative facts as a claim for trade secret misappropriation under the Act. . . Where the essence of the claim relates primarily to the alleged misappropriation of a trade secret, the claim is displaced by the preemptive language of the Act.

AcryMed, 317 F.Supp.2d at 1217 (citations omitted).

---

[1]     "ORS 646.461 to 646.475 shall not affect: . . . Contractual remedies, whether or not based upon misappropriation of a trade secret." ORS 646.473(2)(a).

5 - OPINION AND ORDER

In this case, plaintiff has two identifiable and separate claims: breach of the written contract, and misappropriation of alleged trade secrets and confidential information. Plaintiff has not, as it suggests in the response memorandum, alleged a claim for breach of an agreement implied in fact or in law; consequently <u>Jaqua v. Nike, Inc.</u>, 125 Or. App. 294, 865 P.2d 442 (1993), on which plaintiff relies, does not inform my decision.

In summary, I conclude that plaintiff's common law claim is preempted by the OTSA and is governed by the three-year statute of limitations.

      b.      <u>Are Plaintiff's Misappropriation Claims Time-Barred?</u>

Under ORS 646.471,

> [a]n action for misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim.

Thus, the critical date with respect to plaintiff's complaint is August 18, 2006, three years before plaintiff commenced this action on August 18, 2009. Defendant contends that plaintiff has judicially admitted, through the allegations of paragraph 30 of the Amended Complaint, that it knew of defendant's intention to use plaintiff's alleged trade secrets in July 2006, more than three years before filing the initial complaint. Paragraph 30 states:

> In July 2006, Diversified orally informed Skylar that Meduri was negotiating with Costco and intended to sell Skylar's Exclusive Dried Blueberries directly to Costco, excluding Skylar from the deal.

Other evidence of record shows the following. In a deposition taken in June 2010, Peter Vermeulen, plaintiff's general manager, testified concerning a document he had prepared in October 2006, as follows:

6 - OPINION AND ORDER

> Q. So then this time line that follows -- are we talking about 2006? Are those the right years?
>
> A. Yes.
>
> Q. So on July 17, Mike [Zobel of Diversified] confirms that Meduri will move forward with KS [Costco's Kirkland Signature brand] on a potential deal supplying Costco, KS with blueberries. So that's -- Mr. Zobel is telling you on July 17 that Meduri is going to sell direct to Costco the KS brand blueberries; correct?
>
> A. That's what it says. Yes.
>
> Q. That's what you believed to be true at the time your wrote this?
>
> A. Yes.

Second Declaration of Dallas DeLuca, Deposition of Peter Vermeulen, p. 96. The document in question, Exhibit 44 to Vermeulen's deposition (titled "Affidavit Peter Vermeulen Concerning Meduri Relationship and Agreements)" contains the following relevant statements:

> On June 2, 2006, I had a discussion with Mike Zobel nature of discussion Costco-Meduri upon which Mike Zobel stated that Costco had meeting in May with Meduri to evaluate blueberry business.
>
> The following timeline includes that last 4 months of developments with Meduri Farms:
> **June 14 2006:** pricing blueberries not available at Meduri. Another 30-45 days before pricing is fixed:
> **July 17 2006:** Mike confirms that Meduri will move forward with[] KS on a potential deal on supplying Costco KS with blueberries.
> **July 31 2006:** Mike confirms that still no pricing is available on blueberries.
> **August 7 2006:** Joe [Meduri] receives email SKH re-emphasizing the position of SKH regarding the blueberry dealings . . . directly with the customer.
> **August 8 2006:** Joe replies and considers the matters closed and does not want to discuss blueberry business with SKH and claims that SKH has not requested blueberries. . ..

Second Declaration of Dallas DeLuca, Exh. 1, p. 2.

7 - OPINION AND ORDER

The August 7 and 8, 2006, e-mails described above reveal a dispute between plaintiff and defendant concerning the blueberry business. On August 7, Vermeulen wrote to Joe Meduri, as follows:

> I wanted to give you an update on several developments concerning the blueberries and Stoneridge Orchards: . . . We have not had any discussions with Costco HQ concerning the sales of the Kirkland signature blueberry for 2007 and are assuming that the customer is pursuing the matter directly with several parties in the marketplace. We still maintain our position that any discussions with Meduri regarding blueberry sales to Costco for the private label Kirkland Signature brand or Stoneridge Orchards should be conducted through SkylarHaley. At the very least we need to be informed about any ongoing discussions that will potentially affect our business. As we stated in the past we expect Meduri farms to honor the written and implied agreements and understandings that were and are in place and that conducting business directly with the customer would break those agreements . . . .

Declaration of Natalia Yegorova, Exh. 6, pp. 1-2.

On August 8, 2006, Meduri responded:

> I'm surprised to see you writing about blueberries after our discussion in April. I thought I was quite clear on where we stood on this matter. You have not bought blueberries from us in quite some time and as far as I know your vendor of choice is Oregon Freeze Dried. Oregon Freeze Dried went out once again on your behalf and raised pricing in the marketplace. Not good for anyone.
>
> As far as our written agreement, it has expired in time as well as not meeting volume performances. I've never quite understood what you have meant by "implied agreements."
>
> We hope to continue working with you on the existing business, but unfortunately blueberries will not be a part of it.

Declaration of Natalia Yegorova, Exh. 6, p. 2.

In his "Affidavit Peter Vermeulen Concerning Meduri Relationship and Agreements," Exhibit 44 to his deposition, Vermeulen next summarizes a meeting with Zobel on September 18, 2006:

8 - OPINION AND ORDER

> **September 18 2006:** Mike Zobel makes visit to SKH office and acknowledges Meduri farms to sell Meduri label apple blend to Costco and blueberries to Kirkland Signature. Mike is also given SKH notice that more fruits could be on the "chopping block" and that it is just a matter of time before all fruits that are successful are taken in-house by Costco. Meduri agrees to supply Kirkland Signature despite the contractual stipulations and states that Costco directly approached Meduri farms shortly after the Kirkland Signature contracts were cancelled.

Second Declaration of Dallas DeLuca, Exh. 1, p. 2. That summary is mirrored in Paragraph 31 of the Amended Complaint, which states:

> On or about September 18, 2006, Skylar met with Diversified and learned that Meduri had entered into an agreement with Costco to sell Skylar's Exclusive Dried Blueberries directly to Costco. Skylar was also notified at that time that more of the fruit supplied by Skylar to Costco and produced by Meduri would be on a "chopping block," that it was just a matter of time before all fruit would be privately-labeled by Costco, and that Meduri planned to supply the fruit directly to Costco.

Plaintiff argues that the September 18, 2006, meeting with Zobel was the first date on which it discovered or by the exercise of reasonable diligence should have discovered that defendant intended to misappropriate plaintiff's trade secrets/confidential information and sell blueberries directly to Costco. Plaintiff's argument is refuted by the e-mail exchange of August 7 and 8, 2006, which plainly shows that plaintiff either knew of or in the exercise of reasonable diligence should have discovered defendant's intentions by that time, if not earlier in July 2006.

Thus, all of plaintiff's claims except the breach of contract claim (Claim 1), are time-barred.[2]

---

[2] The claim for an accounting, Claim 2, is barred by the doctrine of laches, which looks to the analogous statute of limitations to determine a reasonable length of time to file the claim. See, e.g., Fontana v. Steenson, 145 Or. App. 229, 232, 929 P.2d 336 (1996). As explained, the analogous statute of limitations is three years.

9 - OPINION AND ORDER

II.    Damages

In its breach of contract claim, plaintiff seeks an award of lost profits of no less than $5,874,000 for the years 2006-2009, based on an allegation, in essence, that defendant's breach of contract caused plaintiff to breach its contract with Costco and, therefore, cost plaintiff lost profits from anticipated future contracts that "would likely have continued through at least 2009." Amended Complaint, ¶ 41. Defendant moves for partial summary judgment on plaintiff's claim for lost profits, asking the court to limit plaintiff's claim to no more than $1,282,500 for the 2005-2006 contract year, which defendant contends is the highest figure the evidence supports. Anything over that number, defendant argues, is pure speculation.

A claim for lost profits is limited to net lost profits[3] and requires proof of what "'may reasonably be supposed to have been within the contemplation of both parties at the time of the making of the contract . . ..'" Logan v. D.W. Sivers Co., 343 Or. 339, 354, 169 P.3d 1255 (2007)(emphasis in original; citations omitted). Both the existence and amount of lost profits must be proved with reasonable certainty. GPL Treatment, Ltd. v. Louisiana-Pacific Corp., 133 Or. App. 633, 637, 894 P.2d 470 (1995), aff'd 323 Or. 116, 914 P.2d 682 (1996). "Reasonable certainty" "signifies nothing more than 'probability' and [refers] to the kind of evidence required rather than the quantum of proof." GPL Treatment, 133 Or. App. at 637. Lost profits "are not proved merely by testimony of unverifiable expectations of profits" but may be established by, for example, proof of past profits of an established business. Willamette Quarries, Inc. v. Wodtli, 308 Or 406, 412, 781 P.2d 1196 (1989).

---

[3]    See, e.g., GPL Treatment, Ltd. v. Louisiana-Pacific Corp., 133 Or. App. 633, 637, 894 P.2d 470 (1995).

10 - OPINION AND ORDER

According to defendant, the evidence plaintiff has produced concerning lost profits after the 2005-2006 contract year is "testimony of unverifiable expectations of profits" and is insufficient to create a jury question. Plaintiff's president, Perry Abadir, states in his declaration that:

> Based on my 14 year experience as a general manager at Costco Wholesale prior to founding Skylar, and my relationship with other major retailers, such as Sam's Club, Albertsons' and Safeway, I expected that Skylar's supply agreement with Costco would have been renewed annually for at least 4-5 years, barring breach or other supply or quality problems.
>
> In my experience in the industry, large retailers do not enter into long-term contracts with suppliers; rather, once such a relationship is established, they tend to simply continue issuing new purchase orders for the product. Relationships that Skylar has established with large retailers, such as Costco, Sam's Club, Albertsons', Safeway and others were established in 2003 and 2004 and they still continue today (except for the blueberry supply to Costco).

Declaration of Perry Abadir, ¶¶ 21-22.

Plaintiff's evidence in support of potential future contracts with Costco is weak; however, I find it inappropriate at this juncture to withdraw a portion of plaintiff's lost profits claim from jury consideration. It may well be that by the end of the final pretrial conference or at the end of plaintiff's case in chief, I will deem plaintiff's evidence insufficient, but I am not persuaded that judgment as a matter of law should be entered at this time. Consequently, I deny defendant's motion for partial summary judgment with respect to damages.

11 - OPINION AND ORDER

CONCLUSION

Defendant's Motion for Partial Summary Judgment (# 26) is granted with respect to plaintiff's Claims 2, 3, and 4, and denied with respect to plaintiff's claim for lost profits.

DATED this 27th day of September, 2010.

/s/ Robert E. Jones
ROBERT E. JONES
U.S. District Judge

12 - OPINION AND ORDER